IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-00839-MSK-KMT

DEBBIE GILLON,

      Plaintiff,

v.

JUDY BEEMAN, Medical Supervisor,
MICHAEL SAXEROD, Optometrist,
JENNIFER MASCARENAS, RN, and
DORIS MARTINEZ, Medical Records,
CYNTHIA GLASSMAN,

      Defendants.

---

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment

(**#66**), to which Plaintiff Debbie Gillon responded (**#69**), Defendants replied (**#70**), and Ms.

Gillon sur-replied (**#71**).  Having considered the same, the Court **FINDS** and **CONCLUDES** the

following.

### I.   Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1343 and 42

U.S.C. § 1983.

### II.   Background

Ms. Gillon[1] is a prisoner incarcerated in a Colorado state facility.  In her Amended

---

[1]In considering the Plaintiff's filings, the Court is mindful of her *pro se* status, and
accordingly, reads her pleadings liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).
However, such liberal construction is intended merely to overlook technical formatting errors
and other defects in the Plaintiff's use of legal terminology and proper English.  *Hall v. Bellmon*,

Complaint (#**55**)[2], she asserts a number of civil rights claims under 42 U.S.C. § 1983 and state law negligence theories with regard to the Defendants' provision of medical care relating to her eyes.  These claims fall into two general categories: (1) those related to the alleged failure to promptly treat Ms. Gillon for a detached retina; and (2) those concerning the alleged failure to provide metal or wire rim glasses rather than plastic frame glasses.[3]

### 1.      Detached Retina

Ms. Gillon asserts an Eighth Amendment and related state law claims based on the failure to provide her immediate medical treatment after she reported seeing black dots, which were ultimately determined to be caused by a detached retina.  Her claims are also based on the alleged failure of certain Defendants to respond to her grievances[4] regarding this issue.

The evidence shows that Ms. Gillon complained on October 6, 2009 to medical staff that she was seeing black dots.  Her condition worsened, and she submitted a written request for

---

935 F.2d 1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[2]Because Ms. Gillon signed her Amended Complaint under penalty of perjury pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, the Court will treat it as a sworn affidavit to the extent the allegations appear to be based on personal knowledge.  Therefore, the Amended Complaint, as well as the attached exhibits, are considered as Ms. Gillon's evidence in response to Defendants' Motion for Summary Judgment.

[3]Ms. Gillon also asserted a claim of retaliatory failure to provide medical treatment but withdrew it after the Defendants moved for summary judgment on the grounds that this claim was not administratively exhausted.  Ms. Gillon concedes that the retaliation claim was not exhausted.

[4]The Colorado Department of Corrections has a three-step administrative grievance process.

medical treatment.  She was scheduled for the next scheduled optometry clinic on October 19,

2009.  She was seen by the optometrist[5] and a detached retina was diagnosed.  Ms. Gillon was

transferred to the hospital on October 20, 2009 for further evaluation; surgery was conducted 13

days later, on November 2, 2009.  During this time period and thereafter, Ms. Gillon filed a

number of grievances,[6] all of which were denied on the grounds that she was promptly treated

once her written request for medical attention was received.

### 2.      Wire/Metal Rim Glasses

Ms. Gillon's second set of claims concern the failure of the medical staff to provide her

with wire rim or metal glasses after she reported an allergy to plastic, as well as various related

claims concerning the handling of her paperwork and documentation of her alleged allergy.

 Ms. Gillon apparently had metal glasses when she was incarcerated and requested a

replacement set in June 2009.[7]  Ms. Gillon stated on various medical forms that she had an

allergy to plastic and requires metal frame glasses.  The standard issue glasses from the Colorado

---

[5]According to the doctor's notes from that visit, Ms. Gillon reported that she had only been seeing black spots for the past 4-5 days, not since October 6, 2009.

[6]Before the surgery, Ms. Gillon filed a Step 1 administrative grievance on October 22, 2009, stating that the delay in diagnosing her detached retina had caused permanent vision loss and other damage, which could have been avoided with earlier treatment.  Ms. Gillon submitted a Step 2 grievance on October 25, 2009, again complaining that the failure to provide immediate treatment had resulted in a variety of permanent injuries.  The grievance was again denied, apparently on the grounds that Ms. Gillon had not put in a written request for treatment on October 6.  Ms. Gillon filed a Step 3 grievance on March 31, 2010, again noting the failure of medical staff to respond to her verbal request for treatment and claiming harm from the delay in receiving surgery.  Again, this grievance was denied, primarily on the grounds that medical staff had determined she received adequate treatment.

[7]According to various medical records, Ms. Gillon's metal frame glasses had plastic nose pads and temple pieces but Ms. Gillon does not complain of any reactions to those parts of her original glasses.

Department of Corrections' medical division have plastic frames.  Ms. Gillon received her replacement glasses, which had plastic frames, in August 2009.  She received another pair in June 2010, which were stamped "nylon."

There is no evidence in the record of testing for an allergy or that the issued glasses caused an allergic reaction.  Ms. Gillon was examined by medical professionals in July and November 2009.  No symptoms consistent with an allergy to plastic frames were observed. When Ms. Gillon was examined on July 8, 2010 following her eye surgery, the medical provider noted that Ms. Gillon was wearing several plastic items next to her skin without symptoms of an allergic reaction.  Ms. Gillon had redness around the nose pads of her glasses, but this was determined to be a problem with the fit of the glasses, rather than an allergy.   Ms. Gillon was again examined by a nurse practitioner in July 2010 regarding the alleged allergy.  Again, no symptoms consistent with an allergy were noted. [8]

The only evidence in the record related to Ms. Gillon's claimed allergy are miscellaneous instructions given by medical providers based on her representations.  For example,  her eye surgeon, Dr. Hugo Quiroz-Mercado, wrote a letter dated November 10, 2009 in which he stated she should have metal glasses.  In a subsequent affidavit, however, Dr. Quiroz-Mercado clarified that he wrote the letter based only on Ms. Gillon's representation and did not perform any examination or allergy testing. .  Another medical provider wrote a note on February 9, 2010 in Ms. Gillon's file stating that Ms. Gillon should be provided metal glasses; again, this doctor subsequently clarified that this recommendation was based on Ms. Gillon's report of an allergy,

---

[8]However, there is evidence that Ms. Gillon has an allergy to latex and/or adhesives, which could account for some of the symptoms she attributes to plastics.

4

not an examination or allergy testing.  There is another note in her file dated February 2007,

which has a handwritten note on it stating "wire frames – she's allergic to plastic", but there is

nothing to reflect any diagnosis or testing to confirm the existence of the alleged allergy.

### III.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and

a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs

what facts are material and what issues must be determined.  It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

When the movant has the burden of proof on a claim or defense, the movant must

establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R.

Civ. P. 56(c).  Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a

5

genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and enters

judgment.

When the moving party does not have the burden of proof at trial, it must point to an

absence of sufficient evidence to establish the claim or defense that the non-movant is obligated

to prove.  If the respondent comes forward with sufficient competent evidence to establish a

*prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient

competent evidence to establish its claim or defense, the claim or defense must be dismissed as a

matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV.  Analysis

**A.    Elements of Eighth Amendment Claim for Inadequate Medical Care**

The Eighth Amendment requires jail officials "to provide humane conditions of

confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter,

and medical care and by taking reasonable measures to guarantee the inmate's safety."  *Barney v.*

*Pulsipher*, 153 F.3d 1299, 1310 (10th Cir. 1998).  It is well established that prison officials

violate the Eighth Amendment if their "deliberate indifference to serious medical needs of

prisoners constitutes the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429

U.S. 97, 104 (1976) (internal quotation marks omitted).  However, a claim based on "an

inadvertent failure to provide adequate medical care" or alleging "that a physician has been

negligent in diagnosing or treating a medical condition" does not state a valid claim of medical

mistreatment under the Eighth Amendment. *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (citations omitted). "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 106).

To demonstrate an Eighth Amendment violation, an inmate must satisfy both objective and subjective elements.  The objective component is met if the deprivation is "sufficiently serious," i.e., one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).  Delay in providing medical care give rise to an Eighth Amendment claim if the plaintiff can show that the delay resulted in substantial harm.  *Id*. at 1276.  That substantial harm can be the ultimate physical injury caused by the prisoner's illness or condition or an intermediate injury, such as the pain experienced while waiting for treatment. *Kikumura*, 461 F.3d at 1292.

The subjective component of the deliberate indifference test is met if the defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  A prison medical professional who  "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if that person delays or refuses to fulfill that gatekeeper role.  *Id*. at 1211.  "Deliberate indifference" does not require a showing of express intent to harm, rather, it is enough that the official acted or failed to act despite his or her knowledge of a substantial risk of serious harm.

*Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (citations omitted).

Ms. Gillon, as the Plaintiff, bears the burden of proof on her Eighth Amendment claims. For a prima facie claim, she must come forward with sufficient evidence to establish (1) a serious medical condition; and (2) that the Defendants exercised deliberate indifference to it.

### 1.    Failure to Provide Emergency Treatment for Detached Retina

For the purposes of summary judgment, the Defendants concede that Ms. Gillon's detached retina was a serious medical condition.  However, they contend that Ms. Gillon cannot demonstrate that any Defendant was deliberately indifferent to this condition.

Ms. Gillon's claim appears to be based on the delay in diagnosis and treatment from her first report of seeing black spots.  Construing the evidence in the record most favorably to her, she first reported "black spots" in her vision on October 6, 2009.  As to this complaint, no action was taken.

Unfortunately, the record does not show to whom she made this complaint to.  Similarly, there is nothing that demonstrates that the person Ms. Gillon complained to was aware that "black spots" could be caused by a detached retina requiring an examination before the next optometric clinic on October 19.   However, even if the record were sufficient to show these facts, it does not show substantial harm arising from and delay.  Once the examination occurred and the condition was diagnosed on October 19, surgery did not occur for another two weeks. Thus any delayed diagnosis apparently did not result in a harmful delay in treatment.

### 2.    Failure to Provide Wire Rim Glasses

With regard to Ms. Gillon's Eighth Amendment claim based on a failure to provide her metal glasses, the Defendants challenge her showing as to both 1) existence of a serious medical

condition; and 2) deliberate indifference.

To substantiate a serious medical condition, Ms. Gillon must show that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Even construed most favorably to Ms. Gillon, the record shows no testing or diagnosis of an allergy to plastic.  Her belief that she is allergic to plastic and recommendations by her doctors of metal framed glasses based on her belief does not establish a diagnosed condition.  In addition, there are no records of any observable symptoms which would put an ordinary person on notice that Ms. Gillon suffered from an allergy to plastic framed glasses.   The only observations was redness around the eyepads of Ms. Gillon's eyeglasses which was attributed to improper fit. Thus, the record does not demonstrate the existence of a serious medical condition.

With regard to deliberate indifference, the record shows that Ms. Gillon told the medical staff that she had an allergy, but her disagreement with the providers about her need for metal glasses does not demonstrate deliberate indifference to a serious medical condition.  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir.1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").  Finally, the evidence of record does not show that there was any substantial harm resulted from Ms. Gillon's use of plastic frame glasses.

**B.     State Law Claims**

Because Ms. Gillon's federal law claims fail, the Court declines to exercise supplemental jurisdiction over her state law claims.  Ms. Gillon's state tort claims against the Defendants are therefore dismissed for lack of subject matter jurisdiction.  Pursuant to C.R.S. § 13-80-111, Ms.

Gillon has ninety days after the termination of this case to refile these claims in state court.

**IT IS THEREFORE ORDERED** that

(1)     The Motion for Summary Judgment (**#66**) is **GRANTED IN PART AND**

**DENIED WITHOUT PREJUDICE IN PART**.  The motion is granted as to Ms.

Gillon's Eighth Amendment claims and denied without prejudice as to her state

law claims.  The Court declines to exercise supplemental jurisdiction over the

state law claims and so these are **DISMISSED WITHOUT PREJUDICE** to

refiling in state court.

(2)     The Clerk shall enter judgment in favor of the Defendants and against Plaintiff on

the Eighth Amendment claims, and close this case.

Dated this 5th day of December, 2011

BY THE COURT:

Marcia S. Krieger
United States District Judge